UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JOHN BOWMAN CORMIER AND MARY ANN HENRY CORMIER | CIVIL ACTION NO. 6:09-cv-0703 |
| VERSUS | JUDGE DOHERTY |
| LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, ET AL. | MAGISTRATE JUDGE HANNA |

## RULING ON MOTION

On July 27, 2011, the undersigned granted in part and deferred in part the plaintiffs' motion to compel discovery (Rec. Doc. 53). It was ordered that the documents listed on the Lafayette City-Parish Consolidated Government's privilege log were to be produced to the undersigned for *in camera* review. In all other respects, the ruling was deferred pending the *in camera* review. The Lafayette City-Parish Consolidated Government ("the Government") produced the documents to the undersigned, and the documents were reviewed. For the following reasons, the plaintiffs' motion to compel discovery is DENIED.

## BACKGROUND INFORMATION

On January 29, 2008, Lafayette city police officers Cpl. Heather Martin, Officer Chase Guidry, and Sgt. Dewitt Sheridan investigated an incident at a vacant lot at the corner of South Pierce and West Simcoe Streets in Lafayette, Louisiana. Plaintiff Joseph Bowman Cormier, who has an ownership interest in the lot, was attempting to remove vagrants from the property. Witnesses alleged that Mr. Cormier brandished a firearm, and the officers observed Mr. Cormier cursing in a loud voice. Greg Greer, who was involved in the incident but was not at the scene when the officers arrived, later called 911 and claimed that Mr. Cormier had struck him during the incident. Based on this complaint, a misdemeanor summons for simple battery was issued to Mr. Cormier later that day.

In August 2008, city prosecutors charged Mr. Cormier with aggravated assault in connection with the January 2008 incident. The battery charge and the aggravated assault charge were dropped when the complaining victim, Greg Greer, and witness, Melanie Green, failed to appear for trial. Mr. Cormier was then charged with disturbing the peace and disorderly conduct. In April 2009, Mr. Cormier was convicted on those charges in Lafayette city court.

In July 2008, local television news anchor Chuck Huebner allegedly broadcast the misdemeanor summons that was issued to Mr. Cormier as well as Cpl. Martin's

written statement concerning the January 2008 incident. The police department subsequently conducted an internal affairs investigation "to determine who may have leaked these internal documents to the media."[1] The investigation revealed that Cpl. Martin released her statement to the City Marshal's Office "with no knowledge that the document would be given to the media."[2] During the course of this litigation, defendant Earl "Nickey" Picard admitted having given Cpl. Martin's statement to a deputy city marshal with instructions to deliver it to Mr. Huebner.[3] Mr. Cormier ran unsuccessfully against Mr. Picard for the city marshal post in the fall 2008 election.

In this lawsuit, filed under 42 U.S.C. § 1983, Mr. Cormier alleges that, in connection with the January 2008 incident and the news broadcast, his constitutionally-protected rights were violated by the Government and others. He seeks to recover damages he allegedly sustained as a result of his allegedly having been falsely arrested, falsely prosecuted, and defamed.

In the instant motion, the plaintiffs seek the production of documents, which the Government claims are privileged, that were created during the course of the Lafayette police department's internal affairs investigation.

---

[1] Rec. Doc. 59-4 at 1.

[2] Rec. Doc. 59-4 at 2.

[3] Rec. Doc. 59-3 at 23.

## ANALYSIS

At the hearing on this matter, which was held on July 27, 2011, the plaintiffs identified the documents they are seeking to have produced as those withheld from production and claimed by the Government, in its response to the plaintiffs' discovery, to be privileged.[4] The Government contends that these documents are confidential police files that are discoverable only after their relevancy to the plaintiffs' claims is weighed against the Government's interest in maintaining their confidentiality. Pursuant to this Court's order (Rec. Doc. 68), copies of those documents were produced to the undersigned for *in camera* review. The documents were reviewed in light of the claimed privilege.

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...." The Fifth Circuit has held that, in resolving disputes concerning the production of police files to which a privilege has been asserted, the court should balance the government's interest in confidentiality against the litigant's need for the

---

[4] Rec. Doc. 59-3 at 7.

documents.[5] This is accomplished by evaluating and weighing the ten factors identified in *Frankenhauser v. Risso*.[6] Those factors are:

1. The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information.

2. The impact upon persons who have given information of having their identities disclosed.

3. The degree to which government self-evaluation and consequent program improvement will be chilled by disclosure.

4. Whether the information sought is factual data or evaluative summary.

5. Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question.

6. Whether the police investigation has been completed.

7. Whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation.

8. Whether the plaintiff's suit is non-frivolous and brought in good faith.

9. Whether the information sought is available through other discovery or from other sources.

10. The importance of the information sought to the plaintiff's case.

---

[5] *Coughlin v. Lee*, 946 F.2d 1152, 1160 (5th Cir. 1991).

[6] 59 F.R.D. 339, 344 (E.D. Pa. 1973).

After reviewing these factors in the context of this litigation, the undersigned finds that the documents listed on the Government's privilege log should remain confidential.

With regard to the first factor, the undersigned finds that disclosing these documents would likely thwart governmental processes by discouraging citizens from giving information to the government that might lead to internal affairs investigations. This is so because witnesses are less likely to be forthcoming in response to such an investigation if their comments are not protected from public disclosure. In this case, permitting the contents of the investigation to be revealed would likely discourage police officers from fully cooperating with internal affairs investigations and, consequently, render future internal affairs investigations both less effective and less likely to occur. This factor weighs strongly in favor of maintaining the confidentiality of the documents.

The second factor concerns the impact of disclosure upon persons whose identifies have been protected. This factor is insignificant in this case because the identities of the police officers involved in the January 2008 incident have already been disclosed.

The undersigned finds that the third factor – the degree to which governmental self-evaluation and consequent program improvement will be chilled by the

disclosure – is critically important in this case. The police department should be free to evaluate the actions of its employees and the department's employees should be free to disclose how events unfolded during an incident and arrest without fear that what they say will become part of a later court proceeding. To allow the department's confidential investigative reports and findings to be revealed publicly would discourage internal department evaluations and discourage department employees from freely cooperating with internal affairs investigations. Forcing the department to produce the documents sought by the plaintiffs in this lawsuit would likely have a chilling effect on the department's self-evaluation and self-improvement processes. Therefore, this factor weighs heavily in favor of maintaining the confidentiality of the documents.

The fourth factor asks whether the information sought is factual data or evaluative summary. Both types of information are contained in the documents that were reviewed. For the reasons explained with regard to the first and third factors, the undersigned finds that the evaluative materials should remain confidential. The factual materials will be discussed at factor nine, below.

The fifth factor is whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question. Mr. Cormier was an actual criminal defendant

in proceedings that followed directly from the January 2008 incident. But no criminal charges arose out of the leak of police department documents to the media, which was the focus of the internal affairs investigation. Therefore, this factor weighs in favor of maintaining the confidentiality of the documents created in the course of the internal affairs investigation.

Factor number six asks whether the police investigation has been completed. A stronger case can generally be made for the protection of documents created during an ongoing criminal investigation than for those created during an investigation that has already concluded. Although the Lafayette police department's internal affairs investigation concluded long ago, this factor is not relevant in this litigation. The internal affairs investigation was not an inquiry into Mr. Cormier's arrest but an inquiry into the leak of Cpl. Martin's statement to the media. The internal affairs investigation revealed that the statement was not leaked to the press by a police officer,[7] and discovery in this litigation has established that Nickey Picard had the statement delivered to the news media.[8] Therefore, the fact that the internal affairs investigation has concluded is not significant and does not weigh in favor of either disclosing or protecting the documents.

---

[7] Rec. Doc. 59-4 at 2.

[8] Rec. Doc. 59-3 at 23.

The seventh factor asks whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation. Police department disciplinary proceedings did arise from the internal affairs investigation. The undersigned finds that such intradepartmental proceedings should remain confidential. Therefore, this factor weighs strongly in favor of denying the plaintiffs' request for production of these documents.

The eighth factor inquires into whether the plaintiff's suit is non-frivolous and brought in good faith. No such determination has yet been made, although the defendants have argued that the plaintiffs' claims are frivolous.[9] Therefore, this is a neutral factor.

The ninth factor asks whether the information sought to be produced is available through other discovery or from other sources. Included in the materials sought to be produced in this case are transcribed statements from Sgt. Dewitt Sheridan, Officer Heather Martin, Lt. Nolvey Stelly, Capt. Jimmy Smith, Lt. Morgan Green, Lafayette City Marshal Nickey Picard, and Deputy City Marshal Timmy Picard. Four of them are defendants in this lawsuit. All of them, except for Capt. Jimmy Smith, have been identified as potential witnesses in the case.[10] All of them

---

[9] See, e.g., Rec. Doc. 64 at 9; Rec. Doc. 65 at 16.

[10] Rec. Doc. 58 at 4-6; Rec. Doc. 64 at 13-15; Rec. Doc. 65 at 20-23.

could easily be deposed.  Their deposition testimony would provide the same factual information found in their statements to the internal affairs investigators.  Thus, this factor weighs in favor of non-disclosure.

        The final factor to be considered is how important the information sought is to the plaintiff's case.  Here, the purpose of the police department's internal affairs investigation was to determine whether Cpl. Martin's statement was leaked to the media by a police officer.  The plaintiffs have already been provided with the September 19, 2008 letter from Police Chief Jim Craft, in which he explained that Cpl. Martin unintentionally released her statement to the City Marshal's office "with no knowledge that the document would be given to the media."[11]  Furthermore, in response to discovery in this lawsuit, defendant Nickey Picard admitted that he caused the statement to be delivered to the local news commentator.[12]  There is no factual basis for any claim the plaintiffs' might make concerning the police department leaking Cpl. Martin's statement to the press.  Any claims that the plaintiffs might have against the police officers or the police department would arise out of Mr. Cormier's having been issued a summons concerning the January 2008 incident – not out of the leaking of information concerning that incident to the media.

---

[11]     Rec. Doc. 59-4 at 2.

[12]     Rec. Doc. 59-3 at 23.

Accordingly, neither the internal affairs investigation nor the documents sought to be produced are important to this litigation. This factor strongly supports protecting the documents from disclosure.

In summary, the first, third, fourth, fifth, seventh, ninth, and tenth factors weigh heavily in favor of maintaining the confidentiality of the documents created in connection with the Lafayette police department's internal affairs investigation. The second, sixth, and eighth factors are inconsequential. Therefore, after a careful evaluation and weighing of the ten relevant factors, the undersigned concludes that the Government's interest in maintaining the confidentiality of these documents outweighs the plaintiffs' interest in their disclosure. Accordingly, the plaintiffs' motion is DENIED.

Signed at Lafayette, Louisiana, this 10th day of August 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)