UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JOSEPH BOWMAN CORMIER, ET AL.  CIVIL ACTION NO. 6:09-cv-0703

VERSUS        MAGISTRATE JUDGE HANNA

LAFAYETTE CITY PARISH    BY CONSENT OF THE PARTIES
CONSOLIDATED GOVERNMENT,
ET AL.

## RULING  ON  MOTION

  Currently pending is the motion for summary judgment filed by defendants Lafayette City-Parish Consolidated Government ("the City"), Gary J. Haynes, Shane M. Mouton, Heather Martin, Chase Guidry, and Nolvey Stelly, seeking dismissal of the plaintiffs' claims against them based on the *Heck* doctrine, qualified immunity, and punitive damages. (Rec. Doc. 73). The moving defendants argue that the *Heck* doctrine or, alternatively, the doctrine of qualified immunity, bars the plaintiffs' claims. The moving defendants also seek dismissal of the plaintiffs' punitive damages claim. The motion is opposed. (Rec. Doc. 85). For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND  INFORMATION

  Two very different stories are told by the persons on each side of the controversy presented in this lawsuit. According to the moving defendants, Lafayette

city police officers Heather Martin and Chase Guidry responded to an incident at a vacant lot at the corner of South Pierce and West Simcoe Streets in Lafayette, Louisiana, on April 29, 2008.  Plaintiff Joseph Bowman Cormier, who has an ownership interest in the lot, had called in a complaint concerning vagrants who were trespassing, and the police were responding to the call.  When they arrived, a female witness, Melanie Green, stopped them and allegedly told them that a man she thought was a police officer (Cormier) brandished a firearm, chased a man and pushed him to the ground, and was cursing in a loud voice even after the man had fled on foot.[1] When the officers approached Cormier and began to question him, he once again began using profanities in a loud voice.[2]  When questioned, Cormier allegedly admitted to striking a homeless man from behind, causing him to fall.[3]  Cormier was not arrested at the time.

Greg Greer, who was the individual allegedly involved in the incident but was not at the scene when the officers arrived, called 911 later that day to complain about the incident.[4]  Officer Martin was dispatched to Greer's location where Greer claimed

---

[1]     Rec. Doc. 73-5, at p.15.

[2]     *Id*.

[3]     *Id*., at p. 16.

[4]     Rec. Doc. 73-7.

that Cormier had removed a handgun from the trunk of his car, and when he, Greer, tried to flee, Cormier struck him from behind causing him to fall.[5]  According to the defendants, Greer indicated that he wished to press charges.[6]

Later that same day, Cormier was at the police department and at that time, allegedly based on Greer's complaint, a misdemeanor summons for simple battery was issued to Cormier by Officer Martin.[7]

Cormier's version of these events is substantially different.  In his verified complaint, Cormier attests that he called the police on April 29 to report the trespassers on his property.  According to Cormier, Officer Martin saw the homeless people when she arrived on scene but did nothing.[8]  Cormier left the location to go to the police department to get a "no trespass" letter, and when he arrived he was approached by Martin who asked him to come with her.[9]  According to the complaint:

> Defendant Martin falsely arrested Petitioner Joseph Bowman Cormier without probable cause, and by means of a false affidavit, falsely accusing Petitioner Joseph Bowman Cormier of committing the crime of simple battery against a homeless man named Greg Greer.  At the time, Defendant Martin informed Petitioner Joseph Bowman Cormier

---

[5]     Rec. Doc. 73-5, at p. 17.

[6]     *Id*.

[7]     *Id*.

[8]     Rec. Doc. 1, at p. 6.

[9]     Rec. Doc. 1, at p. 7.

that he was being arrested because he had admittedly pushed Greg Greer.  The illegal arrest occurred in the presence of Defendant Guidry and defendant Lafayette Supervising Police Lt. Nolvey Stelly. . . .[10]

Cormier further contends that he was fingerprinted and booked on the hood of Martin's police cruiser and arrested on the public sidewalk outside the police headquarters, causing him to be publicly humiliated.[11]

On or about May 5, 2008, Lafayette City Marshall Earl "Nickey" Picard received, allegedly from an unknown source, a copy of Martin's statement regarding the events of April 29, together with copies of two witness statements and the misdemeanor summons that was issued to Cormier on that day.[12]  Picard gave Martin's statement to a deputy city marshal, with instructions to deliver it to a local television news anchor.[13]

On July 11, 2008, Cormier qualified to run against Nickey Picard for the post of Lafayette City Marshal.[14]  The complaint alleges that, on July 21 or 22, the local news anchor aired a story allegedly reporting that, based on an internal and confidential police report, Cormier was charged with the misdemeanor criminal

---

[10]      *Id.*

[11]      Rec. Doc. 1, at pp. 7-8.

[12]      Rec. Doc. 59-3, at pp. 22-24.

[13]      *Id.*

[14]      Rec. Doc. 1, at 8.

offense of simple battery but should have been charged with a felony count of aggravated battery.[15]  According to the complaint, "[t]he news report falsely stated that . . .Cormier had pulled a gun while jumping onto a man on his property, striking the man in the back of the head."[16]  At about the same time that the news story aired, on July 22, 2008, the city prosecutor added an additional charge by bill of information, charging Cormier with aggravated assault in connection with the April 2008 incident.[17]  No contemporaneous affidavit supporting the bill of information has been located in the suit record.

When Cormier wrote to the police to complain of the news report, the Chief of Police responded that Officer Martin and Lt. Stelly had released the information to defendant Timothy Picard, Chief Deputy Marshal for the City and the son of Nickey Picard.[18]  According to the complaint, Lt. Stelly and Timothy Picard are friends, and Stelly arranged a meeting with Martin and Timothy Picard to discuss Cormier's arrest, which resulted in the disclosure of Martin's illegally released and confidential police report.[19]  During the course of this litigation, Nickey Picard admitted that he

---

[15]     Rec. Doc. 1, at pp. 8-11.

[16]     Rec. Doc. 1, at p. 9.

[17]     Rec. Doc. 73-5, at p. 31.

[18]     Rec. Doc. 1, at p. 10.

[19]     Rec. Doc. 1, at p. 10.

gave Martin's report to a deputy city marshal with instructions to deliver it to the news media.[20]  On the eve of the election, the same news anchor again aired a report concerning Cormier, allegedly reported that Cormier had been charged with aggravated assault, and if elected and subsequently found guilty, would have to be removed from office.[21]  Cormier was not successful in his bid for election, and Nickey Picard was re-elected.

After the election, when the matter was called for trial in November 2008, neither Mr. Greer nor the witness, Melanie Green, were able to be located to appear for trial, and the battery and aggravated assault charges were dismissed.[22]  At the same time, Cormier was charged by bill of information with one count of disturbing the peace.  Based on the affidavits of Martin and Stelly, however, the single charge arose out of allegedly *separate* incidents on April 29 – Cormier's actions at the vacant lot and his actions at the police station later that day.[23]

---

[20]     Rec. Doc. 59-3, at pp. 22-24.

[21]     Rec. Doc. 1, at pp. 9-10.

[22]     Rec. Doc. 73-6, at p. 3.

[23]     Rec. Doc. 73-6, at pp. 2-3; Rec. Doc. 73-5, at pp. 32-34.  The affidavits in support of the arrest warrants, and therefore, presumably in support of the bill of information, were executed by Officer Martin and Lt. Stelly on December 17, 2008, a month after the assault and battery charges were dismissed and the new charge was set forth by bill of information.

On December 17, 2008, nine months after the incidents occurred, Stelly and Martin executed affidavits for warrants of arrest with regard to Cormier and the events of April 29, 2008.  Stelly's affidavit indicates that Cormier was arrested on April 29, 2008 and that the charge was disturbing the peace under La. R.S. 14:103.[24] Martin's affidavit indicates that Cormier was arrested on April 29, 2008, and that the charges were disturbing the peace, simple battery, and aggravated assault.[25]  On April 29, 2008, however, Cormier was merely issued a summons charging him with simple battery.  In April 2009, Cormier was convicted in Lafayette City Court on the charge of disturbing the peace with regard to the incident at the vacant lot.[26]

In this lawsuit, which asserts claims under 42 U.S.C. § 1983 and Louisiana state law, Cormier alleges that, in connection with the April 2008 incident and the news broadcast, his constitutionally-protected rights were violated by the defendants.[27]  He seeks to recover damages he allegedly sustained as a result of his having been falsely arrested, falsely prosecuted, and defamed.  He claims that police

---

[24]     Rec. Doc. 73-5, at p. 34.

[25]     Rec. Doc. 73-5, at p. 33.

[26]     Rec. Doc. 73-4.

[27]     The defendants contend that the plaintiffs waived their claims under state law based on the plaintiffs' outline of claims (Rec. Doc. 58) submitted in response to the order of the district court.  (Rec. Doc. 55).  The undersigned does not agree, based on the citation to Louisiana Civil Code Article 2315 in Article III of the plaintiffs' outline of claims.

officers Guidry, Martin, and Stelly, along with the city prosecutors, "engaged in a conspiracy to violate his civil rights through his illegal arrest and malicious prosecution for political gain" by assuring "Cormier's defeat in the race against Defendant Nickey Picard for City Marshal."[28]   In his complaint, Cormier sued the City, two city prosecutors, and three city police officers, as well as other individuals. The City, the prosecutors, and the police officers now argue that the claims against them are barred by the *Heck* doctrine.  They alternatively argue that they are entitled to summary judgment in their favor under the doctrine of qualified immunity. Finally, they argue that the plaintiffs are not entitled to recover punitive damages.

**ANALYSIS**

A.      **THE SCOPE OF THIS RULING**

Although styled "Defendants' Motion for Summary Judgment Based on the *Heck* Doctrine," the instant motion (Rec. Doc. 73) actually seeks summary judgment on three separate bases.  First, the City, the prosecutors, and the police officers contend that all claims against them are barred by the *Heck* doctrine.  Second, or alternatively, the City, the prosecutors, and the police officers contend that they are entitled to qualified immunity with regard to all claims asserted against them in this

---

[28]       Rec. Doc. 1, at p. 14.

lawsuit.  Third, the City, the prosecutors, and the police officers contend that the plaintiffs' punitive damages claims should be dismissed.  This ruling will address all three of those subjects.

A separate motion (Rec. Doc. 75) sought dismissal of the claims against the prosecutors under the doctrine of absolute prosecutorial immunity.  That motion was granted in a separate ruling, and the plaintiffs' claims against the prosecutors have been dismissed.[29]  (Rec. Doc. 99, 100).  Accordingly, the issues raised in the instant motion (Rec. Doc. 73) will be analyzed only with regard to the plaintiffs' claims against the police officers and the City.

### B.    SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit.[30]  A genuine issue

---

[29]    Rec. Doc. 98.

[30]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Minter v. Great American Insurance Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005).

of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[31]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact.[32] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[33] The evidence is viewed in the light most favorable to the nonmoving party,[34] and all facts and inferences are construed in the light most favorable to the nonmovant.[35] The allegations in a verified complaint are competent summary judgment evidence.[36]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that

---

[31]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

[32]    *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[33]    *Id*.

[34]    *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002).

[35]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[36]    *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003).

there is insufficient proof concerning an essential element of the nonmoving party's claim.[37]   The motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim.[38]

### C.    THE *HECK* DOCTRINE

The City and the police officers contend that Cormier's conviction on the disturbing the peace charge precludes him from asserting a § 1983 claim with regard to the simple battery and aggravated assault charges under the *Heck* doctrine.  In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court determined that:

> [I]n order to recover damages for allegedly unconstitutional . . . imprisonment or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

The purpose of this doctrine is to avoid collateral attacks on valid convictions.  If a § 1983 action would imply the invalidation of the plaintiff's conviction, the complaint should be dismissed unless the plaintiff can demonstrate that the conviction has

---

[37]    *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp. v. Catrett*, 477 U.S. at 325.

[38]    *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

already been expunged or reversed.[39]   On the other hand, however, when the plaintiff's § 1983 action, if successful, "will not inherently imply the nullification of the criminal judgment against the Plaintiff, the action should be allowed to proceed."[40]

The City and the police officers contend that, since Cormier was convicted on the disturbing the peace charge, *Heck* precludes him from challenging his prosecution on the simple battery and aggravated assault charges that arose out of the same incident despite the fact that the simple battery, aggravated assault, and disorderly conduct charges were initiated at a different times and even though the battery and assault charges were dismissed prior to trial.

To support that contention, the City and the police officers rely in large part on the Fifth Circuit's decision in *Wells v. Bonner*, 45 F.3d 90 (5th Cir. 1995).  A close reading of *Wells* reveals, however, that it is inapposite.  Wells was arrested and charged with resisting a search and disorderly conduct.  The disorderly conduct charge was dropped, and he was convicted of resisting the search.  He then filed a § 1983 action, alleging false arrest, excessive force, and malicious prosecution.  In

---

[39]     *Arnold v. Town of Slaughter*, No. 01-902-D, 2003 WL 25729166, at *1 (M.D. La. Sept. 5, 2003), *aff'd* 100 Fed. App'x 321 (5th Cir.), *cert. denied*, 543 U.S. 966 (2004), citing *Heck v. Humphrey*, 512 U.S. at 477.

[40]     *Id.*

support of his § 1983 claims, Wells argued that the police lacked probable cause for the arrest on either charge.  Thus, he was contesting his conviction on the resisting a search charge, and his § 1983 claims were clearly barred by *Heck*.  As the court said:  "Wells's § 1983 claims for false arrest and malicious prosecution are not cognizable under *Heck* because each of these claims imply the invalidity of his conviction."[41]

In the instant case, the City and the police officers argue that even if there was no probable cause to arrest Cormier for each of the crimes charged, proof of probable cause to arrest him for a related offense triggers the *Heck* bar.  In support of that proposition, they cite *Pfannstiel v. City of Marion*[42] and *Arnold v. Town of Slaughter*.[43]   But that argument confuses two separate and distinct concepts.  *Pfannstiel* and *Arnold* stand for the proposition that a showing of probable cause for an arrest is a substantive defense to a § 1983 claim for false arrest.  But *Heck* bars the assertion of a § 1983 claim of any sort when the claimant is attacking his criminal conviction.  Therefore, *Pfannstiel* and *Arnold* are inapplicable with regard to the pending motion.

---

[41]     *Wells v. Bonner*, 45 F.3d 90, 96 (5th Cir. 1995).

[42]     *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)

[43]     Cited supra.

In the instant case, the plaintiffs are not attacking Cormier's conviction on the disturbing the peace claim of which he was convicted. They are arguing, instead, that Cormier was falsely arrested, maliciously prosecuted, and defamed with regard to the simple battery and aggravated assault claims that were dismissed. Once a claim has been dismissed, the person charged may have a valid § 1983 claim.[44]    The undersigned has found no authority for the proposition that any conviction automatically triggers *Heck* and bars any potential § 1983 claim that might arise out of the same underlying facts. Instead, the critical inquiry is whether the claimant's § 1983 claims constitute a collateral attack on his conviction.

Cases in which it was determined that *Heck* bars § 1983 claims help to clarify the issue. In *Muller v. St. Tammany Parish*, Muller was convicted on a charge of false impersonation of a peace officer. He then brought a § 1983 action, alleging that law enforcement officers falsified police reports and affidavits and illegally searched his home and vehicle to obtain evidence used to prosecute him. His claims were barred under *Heck* because "[a] claim of illegal search and seizure implicates the validity of a criminal conviction where the conviction is based on evidence discovered during that search or the resultant arrest."[45]

---

[44]    *Webb v. Parole Division*, 234 F.3d 29 (5th Cir. 2000).

[45]    *Muller v. St. Tammany Parish*, No. 09-3362, 2010 WL 2464802, at * 11 (E.D. La. Apr. 28, 2010).

Similarly, in *Connors v. Graves*, the plaintiff pleaded guilty to discharging a firearm from a motor vehicle, attempted simple burglary, and negligent injury.  He then filed a § 1983 action, alleging excessive force, unlawful seizure, and conspiracy claims against the law enforcement officers.  The court held that the *Heck* doctrine barred those claims, "because success on those claims would necessarily impugn Connors's state criminal convictions . . . ."[46]

In the instant case, however, it is conceivable that Cormier's conviction on the disorderly conduct charge would not be challenged if he is ultimately successful on his § 1983 claims.  The disorderly conduct charge[47] does not require evidence of "the intentional use of force or violence"[48] as the battery charge does nor does the disorderly conduct charge require evidence of the involvement of a firearm or other weapon as the aggravated assault charge does.[49]  Furthermore, the battery and assault

---

[46]     *Connors v. Graves*, 538 F.3d 373, 375 (5th Cir. 2008).

[47]     Cormier was charged with disturbing the peace and disorderly conduct under Ordinance No. 62-38(a)(2) of the Code of Ordinances of the Lafayette City-Parish Consolidated Government, which is defined as using unnecessarily loud, offensive, or insulting language in a manner as would foreseeably disturb or alarm the public.

[48]     La. R.S. 14:33 (definition of battery under Louisiana state law); Ordinance No. 62-67 of Code of Ordinances of the Lafayette City-Parish Consolidated Government (definition of battery under the City's Code of Ordinances).

[49]     La. R.S. 14:37 (definition of aggravated assault); Ordinance No. 62-78(b) of Code of Ordinances of the Lafayette City-Parish Consolidated Government (definition of aggravated assault under the City's Code of Ordinances).

claims were dismissed, and Cormier was not convicted on those charges.  Therefore,

Cormier's contention that he was falsely arrested, maliciously prosecuted, and

defamed with regard to the simple battery and aggravated assault charges does not

necessarily impugn his conviction on the disorderly conduct charge.  Consequently,

the *Heck* doctrine does not bar the plaintiffs' § 1983 claims with regard to the battery

and assault claims.  The defendants' motion for summary judgment based on the *Heck*

doctrine is denied.


**D.   QUALIFIED IMMUNITY**

The City and the police officers seek dismissal of the § 1983 claims against

them on the basis of qualified immunity.

> [A] court applies a two-step analysis to determine whether
> a defendant is entitled to summary judgment on the basis
> of qualified immunity.   First, we determine whether,
> viewing the summary judgment evidence in the light most
> favorable to the plaintiff, the defendant violated the
> plaintiffs constitutional rights.  If not, [the] analysis ends.
> If so, we next consider whether the defendant's actions
> were objectively unreasonable in light of clearly
> established law at the time of the conduct in question.  To
> make this determination, the court applies an objective
> standard based on the viewpoint of a reasonable official in
> light of the information then available to the defendant and

the law that was clearly established at the time of the defendant's actions.[50]

Applying this analysis, the Court finds that Officer Guidry is entitled to qualified immunity but Officer Martin and Lt. Stelly are not.


A.   **OFFICER GUIDRY**

The first inquiry in the requisite analysis is whether the defendant violated the plaintiff's constitutional rights. The only allegations against Officer Guidry are that he was a trainee at the scene of the April 2008 incident but played virtually no role in deciding whether charges should be brought against Cormier or what those charges should be. He was also allegedly present at the time of the arrest at the police station in April 2008, but there is no allegation that he actually did anything beyond observing the other police officers' interaction with Cormier. While there are allegations that Guidry testified falsely at the trial, that conduct would be protected by the absolute immunity from civil liability afforded to witnesses in a criminal trial.[51] Finally, there is no evidence linking Guidry to the release of information to the news media. In summary, there is no evidence that anything he did violated the plaintiffs'

---

[50]    *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007) (internal citations omitted).

[51]    *Enlow v. Tishomingo County*, 962 F.2d 501, 511 (5th Cir. 1992), citing *Briscoe v. LaHue*, 103 S.Ct. 1108, 1121 (1983).

constitutional rights.  Accordingly, Officer Guidry is entitled to qualified immunity, and the claims against him will be dismissed with prejudice.

### B.   OFFICER MARTIN AND LT. STELLY

With regard to Officer Martin and Lt. Stelly, however, a genuine dispute concerning material facts precludes a finding that they are entitled to qualified immunity.  Officer Martin responded to the scene of the January 2008 incident, she interviewed and obtained statements from the alleged victim Greg Greer and witness Melanie Green, neither of whom showed up at the trial to confirm what they allegedly stated to her, and she issued the battery summons to Cormier, after she obtained information from Greer and Green.  The parties concede that Cormier was "arrested" when Martin issued the simple battery summons to him.  If the arrest for simple battery was made by Officer Martin without probable cause, then she violated Cormier's constitutional rights.

The defendants contend that there was probable cause for the issuance of a simple battery summons to Cormier, arguing that the existence of probable cause mandates a finding that Officer Martin is entitled to qualified immunity.  Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude

that the suspect had committed or was committing an offense."[52]   Louisiana law

defines battery as "the intentional use of force or violence upon the person of

another,"[53] and defines simple battery as "a battery committed without the consent of

the victim."[54]   The City defines simple battery as "the intentional use of force or

violence upon the person of another, without the consent of the victim, committed

without a dangerous weapon."[55]   Cormier contends in his verified complaint that he

was falsely accused of having battered Greer.   When this is accepted as true, as it

must be at this time, there is a genuine issue of material fact concerning whether

Martin had probable cause to arrest Cormier on April 29.   This is sufficient to

preclude summary judgment in Martin's favor with regard to qualified immunity.

But there is more.   Cormier also alleges that the police officers conspired to

violate his civil rights and to defame him in order to assure Nickey Picard's re-

election as City Marshal.   According to Cormier's complaint, he was told by the

City's Chief of Police that Martin and Stelly released the information that was aired

---

[52]      *Vance v. Nunnery*, 137 F.3d 270, 276 (5th Cir. 1998); *United States v. Levine*, 80 F.3d
129, 132 (5th Cir. 1996).

[53]      La. R.S. 14:33.

[54]      La. R.S. 14:35.

[55]      Ordinance No. 62-67, Code of Ordinances of the Lafayette City-Parish Consolidated
Government.

-19-

on television to the news anchorman.[56]  If there was, as alleged, a conspiracy to interfere with Cormier's candidacy and aid Picard's campaign, then the release of Martin's statement to the media was an act in furtherance of that conspiracy.  Cormier alleged in his verified complaint that the information set forth in the statement, and reported on TV, was false.  In the television news reports, Cormier was first accused of having committed aggravated battery and later accused of having committed aggravated assault.  The second news story allegedly suggested that if Cormier was elected and subsequently found guilty on the aggravated assault charge, he would be found guilty of committing a felony, and would have to be removed from office.[57]

Louisiana law does not recognize an independent cause of action for civil conspiracy.  Instead, Article 2324 of the Louisiana Civil Code states:  "He who conspires with another person to commit an intentional or wilful act is answerable, in solido, with that person, for the damage cased by such act."  Louisiana jurisprudence is clear the actionable element of a civil conspiracy claim is not the conspiracy itself but the underlying tort that the conspirators agree to perpetrate and

---

[56]       Rec. Doc. 1, at 10.

[57]       Rec. Doc. 1, at 9-10.  It should be noted that although the December 2008 affidavits for Cormier's arrest reference state charges, Cormier was actually charged with violating City ordinances, not with violating state laws.  (Rec. Doc. 73-5, at 20, 31, 32).  According to Ordinance No. 62-2 of the City Code of Ordinances, any act or omission constituting a crime or offense that is prohibited by a City ordinance is a misdemeanor.

actually commit in whole or in part.[58]  In this case, Cormier alleges that the police officers conspired to defame him in order to assist with Nickey Picard's political campaign and derail his own.  Under Louisiana law, a statement that imputes the commission of a crime to another is defamatory per se; as a result, falsity and malice are presumed.[59]

It is well settled that an injury to a person's reputation, even if defamatory, is not cognizable, standing alone, under § 1983.  However, "damage to an individual's reputation as a result of defamatory statements made by a state actor, accompanied by an infringement of some other interest, is actionable under § 1983."[60]

The stigma prong of the "stigma-plus" test is satisfied when the plaintiff shows that the stigma was cause by concrete, false assertions by a state actor.[61]  In this case,

---

[58]        *Thomas v. North 40 Land Development, Inc.*, 2004-CA-0610 (La. App. 4th Cir. 01/26/2005), 894 So.2d 1160, 1174, citing *Ross v. Conoco, Inc.*, 2002-0299 (La. 10/15/2002), 828 So.2d 546, 552.

[59]        See, e.g., *Cluse v. H & E Equipment Services, Inc.*, 2009-574 (La. App. 3 Cir. 03/31/10), 34 So.3d 959, 969, *writ denied*, 2010-0994 (La. 09/17/2010), 45 So.3d 1043; *Anders v. Andrus*, 2000-00332 (La. App. 3 Cir. 12/06/2000), 773 So.2d 289, 293, *writ denied*, 2001-C-0066 (La. 03/23/2001), 788 So.2d 427; *Redmond v. McCool*, 582 So.2d 262, 265 (La. App. 1 Cir. 1991); *Trahan v. Ritterman*, 368 So.2d 181 (La. App. 1 Cir.1979); *Makofsky v. Cunningham*, 576 F.2d 1223, 1236 n. 23 (5th Cir. 1978).

[60]        *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995), citing *Paul v. Davis*, 424 U.S. 693, 710-712 (1976).

[61]        *Texas v. Thompson*, 70 F.3d at 392; *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991).

Cormier alleged in his verified complaint that he was accused in a false affidavit of committing the crime of simple battery and that this false accusation was leaked to the media, where the false accusation was repeated.  These allegations must be taken as true.  Therefore, the stigma prong of the test is satisfied.

To satisfy the infringement prong of the test, there must be a showing that the government sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or incorporated in the Bill of Rights.[62] Although defamation, in itself, is not a constitutional tort, a false accusation of wrongdoing, can be a link in a chain showing a deprivation of liberty or property.[63]

Such a link has been established in this case.  Because of the defamation (Martin's statement which must be accepted as false), Cormier was arrested and detained while being fingerprinted, booked, and served with a summons for simple battery outside the Lafayette police department headquarters in April 2008.  He was again arrested when charged with aggravated assault in July or August 2008. Assuming, as is required, that Cormier's arrests on those charges were premised on

---

[62]     *Texas v. Thompson*, 70 F.3d at 392; *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d at 701-02.

[63]     *Doe v. Louisiana*, 2 F.3d 1412, 1421 (5th Cir. 1993) (King, J., concurring), quoting *Mahoney v. Kesert*, 976 F.2d 1054, 1060 (7th Cir. 1992).

false statements by the police officers, then he was falsely deprived of a liberty interest under the Fourth Amendment both times that he was arrested.

Additionally, although there is conflicting jurisprudence, it has been suggested by at least one court that "[c]andidacy for public office is one form of political activity within the protection of the first amendment."[64]  If that is the case, then the leak by Martin and Stelly of false information to the news media was a violation of Cormier's First Amendment right to seek political office and promote his own candidacy.

Furthermore, both the public arrest outside the police headquarters and the airing of false information via the media might be construed as violations of Cormier's right to privacy.  Although there is no express right to privacy in the United States Constitution, the Louisiana Constitution does contain such a provision. It states:  "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy."[65]  The Louisiana Supreme Court has described this right as the right to be

---

[64]     *Hickman v. City of Dallas*, 475 F.Supp. 137, 140 (N.D. Tex. 1979), citing *Bullock v. Carter*, 405 U.S. 134 (1972).

[65]     Article 1, § 5 of the Louisiana Constitution.

let alone and to be free from unnecessary public scrutiny.[66]  Thus, to the extent that Cormier claims that he was stigmatized or, in his word, humiliated by being arrested outside the police headquarters, as well as to the extent that he claims he was stigmatized by the public scrutiny that resulted from having false statements about him communicated by the police officers to the media and by the media to the public, he has satisfied the infringement prong of the requisite analysis.  Succinctly, Cormier has established that he has a valid "stigma-plus" claim against the defendant police officers, Martin and Stelly.  With regard to both Martin and Stelly, then, viewing the summary judgment evidence in the light most favorable to the plaintiff, it appears that the defendants violated Cormier's constitutional rights.  The first part of the qualified immunity analysis weighs against affording immunity to these officers.

The second part of that analysis is whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.  It is objectively unreasonable for any law enforcement officer to support an arrest with a false statement or affidavit.[67]  Consequently, the second part of the

---

[66]     *Capital City Press v. East Baton Rouge Parish Metropolitan Council*, 96-C-1979 (La. 07/01/1997), 696 So.2d 562, 566.

[67]     *Byers v. City of Eunice*, 157 Fed. App'x 680, 683, 2005 WL 3228114, 3 (5th Cir. 2005); citing *Blackwell v. Barton*, 34 F.3d 298, 302-03 (5th Cir. 1994), and *United States v. Cavazos*, 288 F.3d 706, 709-10 (5th Cir. 2002).

qualified immunity analysis also militates against affording immunity to these officers.

The facts alleged by Cormier in his verified complaint must be accepted as true. Those facts cannot be reconciled with the facts related by the defendant police officers in their briefing. Therefore, there are disputed factual issues material to the issues of probable cause and qualified immunity. Furthermore, when the allegations of the complaint are accepted as true, Cormier has stated a valid stigma-plus claim under § 1983, which precludes summary judgment on the issue of qualified immunity with regard to Martin and Stelly. The motion will be denied with regard to both of them.

## C.   THE CITY

The police officers were sued in their individual capacities and also in their official capacities. A suit against a governmental official in his or her official capacity is really a suit against the office or the government.[68] Official capacity suits generally represent another way of pleading an action against an entity of which an

---

[68]     See, e.g., *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009), citing *Monell v. Dept. of Soc. Serv.'s of City of New York*, 436 U.S. 658, 690 n. 55 (1978).

officer is an agent.[69]  Therefore, the plaintiffs' claims against the police officers in their official capacities are actually claims against the City.

Municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under § 1983.[70]  But the § 1983 claims against the City are premised on the fact that the City employed the defendant police officers.  Under § 1983, however, a municipality cannot be held vicariously liable for the conduct of its employees, such as Officers Martin, Guidry, and Stelly.[71]  Municipal liability under § 1983 requires "a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom"[72] or, in other words, action by the government itself.  Therefore, in order to hold the City liable for the acts of its employee police officers, the plaintiffs would have to show that the officers were policymakers for the City.

The plaintiffs do not argue that the police officers were responsible for any municipal policy, and no evidence has been presented in support of such a proposition.  Therefore, the undersigned finds that there is no basis for holding the

---

[69]     *Monell v. New York*, 436 U.S. at 691 n. 55.

[70]     *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999), citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993).

[71]     *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Bd. Of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).

[72]     *Piotrowski v. Houston*, 237 F.3d at 578, quoting *Monell v. New York*, 436 U.S. at 694.

City liable for any actions of the defendant police officers that might have violated § 1983.  Accordingly, the plaintiffs' § 1983 claims against the City, in its capacity as the employer of the police officers, are dismissed.

### E.  PUNITIVE DAMAGES CLAIMS

In their complaint, the plaintiffs indicated that they are seeking to recover punitive damages.  They did not claim punitive damages in their outline of claims that was ordered by the district court, and they did not oppose the motion seeking to dismiss the punitive damage claim.  Therefore, the motion will be granted with regard to punitive damages.

The United States Supreme Court has unequivocally held that a municipality is immune from punitive damages under 42 U.S.C. § 1983.[73]  Thus, to the extent that the plaintiffs are seeking to recover punitive damages from the City, no such recovery is permitted as a matter of law, and the motion will be granted on that basis as well.

To the extent that the plaintiffs seek an award of punitive damages on their claims asserted under Louisiana state law, the motion for summary judgment will be granted.  It is well-settled Louisiana law that punitive damages are not allowed in

---

[73]    *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  See, also, *Webster v. City of Houston*, 689 F.2d 1220, 1230 (5th Cir. 1982); *Hughes v. Gueydan Police Dept.*, No. 6:10-1570, 2010 WL 5625661, at *2 (W.D. La. Dec. 30, 2010).

civil cases unless specifically provided for by statute.  In the absence of such a specific statutory provision, only compensatory damages may be recovered.[74] Nowhere in the pleadings do the plaintiffs identify a statutory provision that allows the recovery of punitive damages for the state-law claims that the plaintiffs assert against any of the defendants.  Accordingly, the moving defendants' motion for summary judgment will be granted with regard to the plaintiffs' claims for punitive damages with regard to the state-law claims.

Finally, to the extent that the defendants suggest in brief that the plaintiffs are claiming punitive damages by seeking to recover attorneys' fees and costs under § 1988 which  may be awarded in the court's discretion to a prevailing party,[75] this Court disagrees that the statutory remedy is for punitive damages, and the claim for fees and costs is premature at this stage of the litigation and the motion will be denied.

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment based on the *Heck* doctrine is denied.  The defendants' motion for summary judgment

---

[74]   See *International Harvester Credit Corp. v. Seale*, 518 So.2d 1039, 1041 (La.1988).

[75]   42 U.S.C. § 1988.

on the basis of qualified immunity under § 1983 is granted with regard to Officer Guidry, in his individual and official capacities, and the plaintiffs' § 1983 claims against him are dismissed with prejudice.   The defendants' motion for summary judgment on the basis of qualified immunity under § 1983 is denied with regard to Officer Martin and Lt. Stelly, in their individual capacities.  The defendants' motion for summary judgment with regard to the § 1983 claims asserted against the police officers in their official capacities and against the City as the employer of the police officers is granted, and those claims are dismissed with prejudice.   Finally, the defendants' motion for summary judgment with regard to the plaintiffs' punitive damages claims is granted.

Signed at Lafayette, Louisiana, this 8th day of November 2011.


Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)